```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------:
ROBERT D. FERGUSON and RALPH MILO, :  02 Civ. 4258 (PKL) (JCF)
                                  :
            Plaintiffs,           :
                                  :
    - against -                   :
                                  :
LION HOLDING, INC.,               :
                                  :
            Defendant.            :
------------------------------:
ROBERT D. FERGUSON and MILO FAMILY:
LIMITED PARTNERSHIP,              :  02 Civ. 4261 (PKL) (JCF)
                                  :
            Plaintiffs,           :      MEMORANDUM
                                  :      AND   ORDER
    - against -                   :
                                  :
HANNOVER RÜCKVERSICHERUNGS-       :
AKTIENGESELLSCHAFT,               :
                                  :
            Defendant.            :
------------------------------:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is a breach of contract action in which the plaintiffs, who are former owners, directors, and officers of the Clarendon Insurance Group, Inc. ("CIGI"), allege that they have been deprived of certain "Earn-Out" payments to which they are entitled in connection with the sale of their interest in Lion Holding, Inc. ("Lion"), CIGI's corporate parent, to Hannover Rückversicherungs-Aktiengesellschaft ("Hannover Re"). The plaintiffs allege that Lion and Hannover Re manipulated CIGI's financial results in order to minimize the Earn-Out payments that the plaintiffs would receive

1

for the years 1999, 2000, and 2001.[1]

The plaintiffs now move pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure for an order compelling the defendants to produce Trevor Bolt, an employee of Hannover Re, for a deposition. The defendants oppose the motion on the grounds that Mr. Bolt possesses no information relevant to this action and that the discovery requested would be unduly burdensome. For the reasons that follow, the plaintiffs' motion is granted.

Background

In 1999, the plaintiffs transferred their shares in Lion to Hannover Re for $364.1 million together with the right to additional Earn-Out payments based on the performance of CIGI during the years 1999-2001. (Amended and Restated Stock Purchase Agreement (the "SPA"), attached as Exh. A to Declaration of Thomas Teige Carroll dated March 9, 2005 ("Carroll Decl."), at 1, 3-5). Under the SPA as well as employment agreements between Lion and the plaintiffs, Earn-Out payments were based on CIGI's Combined Ratio: its Net Expenses and Net Losses divided by Net Premiums. (SPA, Art. 2; Amendment and Restatement of Executive Employment Agreement between Lion Holding Inc. and Robert D. Ferguson dated Dec. 20, 1996 as amended and Amendment and Restatement of Executive Employment Agreement between Lion Holding Inc. and Ralph Milo dated

---

[1] In a partial settlement, the parties have resolved their dispute with respect to earn-out payments for 1999.

Dec. 20, 1996 as amended (collectively, the "Employment Agreements"), both attached as Exh. B to Carroll Decl.). If the Combined Ratio in the years 1999-2001 and as a three-year weighted average was less than 80%, the plaintiffs would be entitled to Earn-Out payments on a sliding scale, with the maximum payout due if the Combined Ratio was 75% or less. (SPA, Art. 2; Employment Agreements).

Like many reinsurers, Hannover Re sometimes seeks "cover" against extraordinary losses. During the relevant period, Hannover Re entered into a series of transactions with CIGI and certain of its retrocessionaires which the parties refer to as the "Stop Loss." (Affidavit of Paul Horan dated March 2, 2005[2] ("Horan Aff."), Exh. H.). Because of exposure that CIGI had incurred on windstorm policies written on properties in Florida, Hannover Re's Group Protection Department initially negotiated a portion of the Stop Loss, known as "Section A," which was similar to cover purchased from time to time for the benefit of other Hannover Re subsidiaries. Mr. Bolt worked in Group Protection at that time and is now head of the department.

Thereafter, Mr. Bolt negotiated additions which were agreed to at a meeting in Dublin in October 2001. These additions were confirmed in an agreement signed on March 8, 2002, and are identified as "Section B" of the Stop Loss. Section B provides

---

[2] The affidavit is mistakenly dated March 2, 2004.

stop loss cover for all losses in connection with CIGI's net retention for the years 1999-2001 when net losses reach certain thresholds or "attachment points." For all years combined, the maximum aggregate that CIGI could recover under Section B was $60 million. (Horan Aff., Exh. H).

When the plaintiffs served a notice to take the deposition of Mr. Bolt, the defendants objected, contending that he had no relevant information and that the requested discovery would entail unnecessary burden and expense. The plaintiffs then filed the instant motion.

Discussion

A. Relevance

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)(citations omitted). The general scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

See also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 167 (S.D.N.Y. 2004); Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL

4

22434101, at *1 (S.D.N.Y. Oct. 23, 2003); Zanowic v. Reno, No. 97 Civ. 5292, 2000 WL 1376251, at *2 (S.D.N.Y. Sept. 25, 2000).

The requested deposition comes well within this generous standard of relevance. There is no dispute that Mr. Bolt has substantial information concerning the Stop Loss, having attended the meeting in Dublin and signed a number of the transaction documents. (Horan Aff., Exh. L, Interrogatory Response No. 18). Moreover, he was a party to communications discussing how the Stop Loss could be structured in order to avoid triggering the Earn-Out. (Horan Aff., Exhs. G, J, K). Indeed, according to the plaintiffs, no other witness has been able to testify about how the attachment points in the Stop Loss were negotiated. (Deposition of Anders Larsson, attached as Exh. E to Horan Aff., at 339; Deposition of Herbert K. Haas, attached as Exh. F to Horan Aff., at 310).

As the plaintiffs point out, the Stop Loss is generally relevant to their claims because it substantially reduced CIGI's net underwriting losses and therefore had an impact on CIGI's financial results, including the Combined Ratio that determined any Earn-Out payments. Moreover, the plaintiffs assert that "Hannover Re selectively used the reinsurance under the Stop Loss to engineer CIGI's combined ratio into a number that would fail to trigger the earn-out. Such conduct directly supports Plaintiffs' claims that Hannover Re manipulated CIGI's financial results to prevent the earn-out from being earned." (Memorandum of Law of Plaintiffs in

Support of Their Motion to Compel Deposition Testimony at 8).

The plaintiffs have thus demonstrated the possibility that the discovery sought will lead to relevant evidence, and the burden shifts to the defendants to show that discovery is improper. <u>See</u> <u>Condit</u>, 225 F.R.D. at 106; <u>Melendez</u>, 2003 WL 22434101, at *1. They have not carried that burden. While conceding that Mr. Bolt possesses information about the Stop Loss, they contend that that program has no legal relevance to the plaintiffs' claims concerning the Earn-Out. As the defendants note, the effect of the Stop Loss was to reduce net losses, which necessarily works in favor of the Earn-Out. They further reason that they had no legal obligation to create the Stop Loss at all, let alone structure it in a way that would make it more likely that the Earn-Out would be triggered. Accordingly, any efforts they may have made to negotiate the attachment points in the Stop Loss to avoid increasing their obligations under the Earn-Out were legitimate, not "nefarious." (Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel the Deposition Testimony of Trevor Bolt at 6).

But the standard for discovery is relevance, not nefariousness. The plaintiffs have alleged a pattern of conduct designed to minimize Earn-Out payments, and they are not limited to exploring only behavior that clearly would have been illegal. Information obtained in connection with apparently legitimate acts may well lead to evidence of related conduct that ultimately proves

to have been wrongful. Furthermore, since Mr. Bolt discussed the Earn-Out during the course of negotiating the Stop Loss, he may well be able to shed light on the defendants' interpretation of the Earn-Out agreement itself.

The defendants' reliance on Hyundai Merchant Marine Co. v. United States, 159 F.R.D. 424 (S.D.N.Y. 1995), is misplaced. There, the plaintiff sought data related to the enactment of a jurisdiction-stripping provision that the government contended deprived the court of the authority to hear the case. Id. at 427-28. The plaintiff argued that the information was relevant to Congress' intent in passing the statute, which, in turn, could support a claim that the law violated principles of separation of powers. Id. at 428. However, the court rejected the requested discovery, finding that "Congress' intent, even if pertinent for the reasons advanced by plaintiffs, need not and cannot be divined from an analysis of the information[.]" Id. No such categorical determination can be made in the instant case.

B. Burden

Even the discovery of relevant evidence, however, is subject to limitation. For example, Rule 26(c) provides that the court may issue an order to protect a party from discovery that would involve "undue burden or expense." Moreover, "Rule 26(b)(2) imposes general limitations on the scope of discovery in the form of a 'proportionality test.'" Zubulake v. UBS Warburg LLC, 217 F.R.D.

7

309, 316 (S.D.N.Y. 2003); see also Convolve, 223 F.R.D. at 167-68. That rule provides that the use of discovery methods otherwise permitted may be limited where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

In this case, the burden of taking one additional deposition is minimal. To be sure, Mr. Bolt resides and works in Germany, so the requested discovery will require a transatlantic flight and overseas accommodations for counsel. But these expenses pale in comparison to the $75 million that is in controversy. Indeed, the parties have demonstrated a willingness to devote substantial resources to discovery, which has included the production of more than one million pages of documents. Finally, both sides are well-financed, and neither gains an economic advantage by making discovery more costly.

Conclusion

For the reasons discussed above, the plaintiffs' motion to compel the defendants to produce Trevor Bolt for a deposition is granted.

SO ORDERED.

_James C. Francis IV_
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       May 23, 2005

Copies mailed this date:

Francis J. Menton, Jr., Esq.
Paul W. Horan, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York  10019

James M. Ringer, Esq.
Steven C. Schwartz, Esq.
Mark A. Weissman, Esq.
Thomas Teige Carroll, Esq.
Clifford Chance US LLP
31 West 52nd Street
New York, New York  10019